1   JEFFREY J. GOULDER (010258)
    **STINSON MORRISON HECKER LLP**
2   1850 North Central Avenue, Suite 2100
    Phoenix, Arizona  85004
3   Telephone:  (602) 279-1600
    Facsimile:  (602) 240-6925
4   E-Mail:     jgoulder@stinson.com

5   SETH ARONSON*
    **O'MELVENY & MYERS LLP**
6   400 South Hope Street
    Los Angeles, California  90071
7   Telephone: (213) 430-6000
    Facsimile:  (213) 430-6407
8   E-Mail:     saronson@omm.com

9   ROBERTA H. VESPREMI*
    **O'MELVENY & MYERS LLP**
10  2765 Sand Hill Road
    Menlo Park, California  94025
11  Telephone: (650) 473-2600
    Facsimile:  (650) 473-2601
12  E-Mail:     rvespremi@omm.com

13  Attorneys for Plaintiff
    IMH SECURED LOAN FUND, LLC
14
    *_pro hac vice_ application pending
15

16              **UNITED STATES DISTRICT COURT**

17                    **DISTRICT OF ARIZONA**

18

| 19 | IMH SECURED LOAN FUND, LLC, | Case No. |
|----|------------------------------|----------|
| 20 | Plaintiff, | **CLASS ACTION** |
| 21 | v. | **COMPLAINT FOR:** |
| 22 | DAVID L. KURTZ, an individual, on behalf of himself and all other persons similarly situated, | **DECLARATORY RELIEF** |
| 23 | | **JURY TRIAL DEMANDED** |
| 24 | Defendants. | |

25

26

27

28

**PRELIMINARY STATEMENT**

1.     Plaintiff IMH Secured Loan Fund, LLC (the "Fund") originates, acquires and manages commercial real estate mortgage loan investments.  About a year and a half ago, due to the effects of the global financial crisis and in an effort to conserve the resources of the Fund, the manager of the Fund, Investors Mortgage Holdings Inc. (the "Manager") suspended redemptions of membership units and the payment of redemptions. At the end of 2009, the Manager developed a plan to reposition the Fund as a Delaware corporation that would ultimately go public (the "Repositioning Plan") in order to (a) create liquidity in the Fund for Fund members, (b) increase its capital base for new investments, (c) reestablish distributions and (d) manage the portfolio for capital appreciation.  As a first step in realizing this plan, IMH Financial Corporation filed a Registration Statement on Form S-4  (the "Form S-4") with the Securities and Exchange Commission (the "SEC") at the end of December 2009 with respect to certain Conversion Transactions (as defined below) that form part of the Repositioning Plan.  The Form S-4 went effective on May 14, 2010, and the Fund will soon start the process of soliciting consents for the Conversion Transactions.

2.     The Fund files this complaint in response to misguided attempts by Fund member defendant David L. Kurtz ("Kurtz") to influence and mislead other Fund members to vote "no" to the Fund's proposed Repositioning Plan.  Kurtz has made numerous assertions to the Manager, the Fund's counsel and to the Fund members that the Form S-4, including the consent solicitation/prospectus contained therein, contains false and misleading statements and should not be relied upon by Fund members and that the Manager was in breach of its fiduciary duties in advancing the Repositioning Plan.  The Fund seeks a declaratory judgment as to Kurtz and all Fund members, as a defendant class, that the Form S-4 does not contain false or misleading statements in violation of the federal securities laws, and that the Manager has acted consistent with its fiduciary duties in advancing the Repositioning Plan.

2

DB04/803569.0119/2820132.1 PF06

1    3.    To date, nine amendments to the draft Form S-4 have been publicly filed

2  with the SEC.  Each of the amendments altered the disclosure contained in the Form S-4

3  to some degree, and, as contemplated, the structure of the Conversion Transactions was

4  revised over time.  The Fund is aware of no false and misleading statements contained in

5  the Form S-4 or any of the amendments thereto.  A majority of the outstanding and issued

6  membership units of the Fund entitled to vote must consent to the proposed Conversion

7  Transactions in order for them to proceed.

8    4.    After the filing of the Form S-4, Kurtz contacted the Manager and the

9  Fund's counsel several times advising them that he believed that the Form S-4 contained

10  false and misleading information and that the Manager was in breach of its fiduciary

11  duties in advancing the Repositioning Plan.  On February 26, 2010, Kurtz sent

12  correspondence to all of the 4,735 Fund members urging each to vote "no" to the

13  Conversion Transactions and claiming that the Form S-4 contains false and misleading

14  information ("Member Letter").  After Kurtz sent the Member Letter, he made additional

15  contact with the Manager and the Fund's counsel and reiterated his position that

16  information in the Form S-4 was "intentionally misleading" and contained "material

17  omissions" to the detriment of Fund members.  Consequently, the Fund seeks a

18  declaratory judgment that the Form S-4 does not contain false and misleading information

19  in violation of the federal securities laws, and that the Manager has acted consistent with

20  its fiduciary duties in advancing the Repositioning Plan.  Because the determination of

21  whether the Form S-4 contains false and misleading statements is common and typical to

22  all 4,735 Fund members, the Fund brings this suit as a defendant class action.

23    **JURISDICTION AND VENUE**

24    5.    This action arises under 28 U.S.C. § 1331 because there is a federal question

25  regarding whether the Fund submitted a Form S-4 to the SEC containing false and

26  misleading statements in violation of Sections 11(a) and 12(a)(2) of the Securities Act of

27  1933 ("1933 Act"), or Sections 10(b) and 14(a) of the Securities Exchange Act of 1934

28

DB04/803569.0119/2820132.1 PF06

1   ("1934 Act") and SEC Rules 10b-5 and 14a-9.  Venue is proper pursuant to 28 U.S.C. §

2   1391 because Kurtz is a resident of and conducts business in Maricopa County, Arizona.

3   **PARTIES**

4   6.    The Fund is a Delaware limited liability company with its principal place of

5   business in Maricopa County, Arizona.

6   7.    Defendant Kurtz is purportedly a Fund member and an Arizona attorney at

7   law who resides and conducts business in Maricopa County, Arizona.

8   **DEFENDANT CLASS ALLEGATIONS**

9   8.    Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of Civil

10   Procedure against Kurtz, on his own behalf and on behalf of a Defendant Class defined as

11   members of the Fund currently holding Fund membership units entitled to vote.

12   9.    The approximate size of the Defendant Class is 4,735, and is comprised of

13   individuals, corporations, partnerships, joint venturers or other legal entities who are Fund

14   members.  Consequently, the Defendant Class is so numerous that joinder of all members

15   of the class is impracticable.

16   10.   There are questions of law and fact common to the Defendant Class,

17   including, but not limited to:

18           a.    whether the Form S-4 filed by IMH Financial Corporation

19       with the SEC contains false and misleading information in violation of the federal

20       securities laws; and

21           b.    whether the Manager acted consistent with its fiduciary duties

22       in advancing the Repositioning Plan.

23   11.   The relief the Fund seeks as to Kurtz is typical of the relief the Fund seeks

24   as to the Defendant Class.

25   12.   This action may be maintained as a Defendant Class Action under the

26   provisions of Rule 23(b)(1) of the Federal Rules of Civil Procedure because the

27   prosecution of separate actions against individual members of the Defendant Class would

28   create the risk of:

4

1                    a.       inconsistent or varying adjudications with respect to individual

2 members of the Defendant Class that would establish incompatible determinations

3 of the same controversy; and

4                    b.       adjudications with respect to individual members of the

5 Defendant Class would as a practical matter be dispositive of the interests of the

6 other members not parties to the adjudications and may substantially impair or

7 impede their ability to protect their interests.

8       13.    This action may be maintained as a class action pursuant to Rule 23(b)(3) of

9 the Federal Rules of Civil Procedure because the questions of law or fact common to class

10 members predominate over any questions affecting only individual members, including

11 those described in paragraph 10, and because a class action is superior to other available

12 methods for fairly and efficiently adjudicating the controversy.

13 **GENERAL BACKGROUND**

14       14.    Plaintiff IMH Secured Loan Fund, LLC (the "Fund") was organized in May

15 2003 to originate, acquire and manage commercial real estate mortgage loan investments,

16 which consist primarily of short-term commercial mortgage loans collateralized by first

17 mortgages on real property, and to perform all functions reasonably related thereto,

18 including developing, managing and either holding for investment and resale or disposing

19 of real property acquired through foreclosure or other means.  The Fund also has wholly-

20 owned subsidiaries that hold real estate acquired through foreclosure.  As of May 17,

21 2010, the Fund had 4,735 members holding 73,038 membership units entitled to vote.

22       15.    On October 1, 2008, due to the unprecedented disruptions in the

23 macroeconomic real estate and related credit markets and the rapid decline in the global

24 and U.S. economies in recent periods, the Manager, among other things, in the interest of

25 conserving the Fund's capital, ceased originating and funding of new commercial real

26 estate mortgage loans for the Fund's portfolio.  Also on October 1, 2008, in the interest of

27 protecting the Fund's liquidity, and in view of depressed market conditions, the Manager

28 suspended redemptions of membership units and the payment of redemptions.

DB04/803569.0119/2820132.1 PF06

16.     Toward the end of 2009, the Manager began work on the Repositioning Plan. The Manager believed that opportunities were emerging from the repricing of commercial mortgage loans resulting from the current economic downturn and corresponding credit crisis. To take advantage of those emerging opportunities and to create liquidity and income for Fund members, the Manager believed the Fund needed to be repositioned.

17.     On December 30, 2009, as a first step toward this repositioning, IMH Financial Corporation filed the Form S-4 with the SEC, including a preliminary consent solicitation/prospectus contained therein, to initiate the process to reposition the Fund and the Manager and to create an opportunity for the Fund members to vote on that repositioning. Nine amendments to the Form S-4 have been filed with the SEC, with the most recent amendment filed on May 10, 2010. Based on comments generated by the SEC, the Fund's legal, accounting and banking advisors as well as input from various Fund members generated from their review of the successive filings, each of the amendments altered the disclosure contained in the Form S-4 to some degree, and, as contemplated, the structure of the Conversion Transactions was revised over time. The Fund is aware of no false and misleading statements contained in the Form S-4 or any of the amendments thereto.

18.     In summary, the Form S-4 described the proposed Repositioning Plan as: (a) the conversion of the Fund into a newly-formed Delaware corporation named IMH Financial Corporation; (b) the acquisition by IMH Financial Corporation of all of the outstanding shares of the Manager, and the outstanding membership interests of IMH Holdings, LLC, a holding company for other affiliates of the Manager ("Conversion Transactions"); and (c) eventually taking the corporation public. The Form S-4 also included the proposed adoption of a stock incentive plan ("2010 Stock Incentive Plan").

19.     The Manager set forth in the Form S-4 its belief that the Conversion Transactions will:

6

- position the Fund to become a publicly traded corporation listed on the New York Stock Exchange ("NYSE") or another national stock exchange;

- create the opportunity for liquidity for Fund members;

- cause the Fund to be internally managed, which would eliminate potential conflicts and more fully align the interests of the Fund, the Manager and its affiliates;

- create the opportunity for IMH Financial Corporation to raise additional capital in the public markets, thereby enabling IMH Financial Corporation to take advantage of investment opportunities available in the markets today. Additionally, to position IMH Financial Corporation to better acquire and originate commercial mortgage loans and other real estate related investment opportunities;

- create the opportunity to achieve long term value for IMH Financial Corporation's stockholders through dividends and capital appreciation; and

- create a board of directors comprised of a majority of independent directors, which would enhance the Fund's corporate governance.

20. According to the Form S-4, upon the consummation of the Conversion Transactions, the Manager intends for IMH Financial Corporation to seek to raise capital through a contemplated future initial public offering of its common stock and to list its common stock on the NYSE or on another national stock exchange. That step would be pursuant to a separate registration statement that IMH Financial Corporation intends to file with the SEC in accordance with SEC requirements.

21. The Manager approved the Conversion Transactions and the 2010 Stock Incentive Plan, and determined that both are advisable and in the best interests of the Fund and its members, and recommended that the Fund members vote in favor of both the Conversion Transactions and the 2010 Stock Incentive Plan. In addition, a fairness

DB04/803569.0119/2820132.1 PF06

1   opinion was rendered by Sutter Securities Incorporated ("Sutter"), an independent

2   financial advisor, wherein Sutter evaluated the proposed acquisition of the Manager and

3   IMH Holdings, LLC and determined that the acquisition of the Manager and IMH

4   Holdings, LLC is fair to the stockholders of IMH Financial Corporation.

5          22.    A majority of the issued and outstanding membership units of the Fund

6   entitled to vote must consent and approve the Conversion Transactions.

7          23.    In or about January 2010, representatives of the Fund met with Kurtz, a

8   Fund member, at his request to discuss the Form S-4.  During that meeting, Kurtz

9   indicated that he planned to write to all of the Fund members in an effort to solicit their

10  opposition to the proposed Repositioning Plan due to his purported (but unsupported)

11  concerns that the Manager was engaging in self-dealing, in breach of its fiduciary duties

12  to the Fund and its members and had included false and misleading information in the

13  Form S-4.  At no time did Kurtz indicate to the Manager or counsel to the Fund that he

14  would engage in his solicitations in accordance with the SEC's proxy rules.

15         24.     Kurtz wrote to the Manager on or about February 8, 2010, and claimed,

16  among other things, that the Form S-4 contained allegedly false and misleading

17  information because, among other things:

18            Contained within the [Form] S-4 filing is an appraisal of the
              Manager's company which is based upon false assumptions,
19            provided by the Manager to the valuation entities, which has
              resulted in an unrealistic valuation for the Manager's holdings
20            which are to be acquired by The Fund and its Members in the
              conversion transactions by way of issuance of stock while
21            allowing the Manager to deplete the cash assets from its
              companies, prior to selling the remaining liabilities to The
22            Fund.  This suggests a lack of good faith and fair dealing by
              the Manager in structuring the S-4 transactions for its benefit
23            to the detriment of The Fund and its Members in breach of the
              Manager's fiduciary obligations.
24
              The [Form] S-4 filing fails to satisfy the Manager's fiduciary
25            obligations by failure to provide any representations or
              warranties associated with the acquisition of the Manager's
26            companies and associated liabilities.  Moreover, it would
              release and hold the Manager harmless for every omission
27            and/or inaccuracy to the detriment of The Fund.

28

                                        8

[The Manager] [e]ngag[ed] in a bait and switch with Fund Members via the [Form] S-4 filing by suggesting the potential for an IPO and renewed dividend stream, when the only thing assured is the Manager's acquisition of approximately $20,000,000 in stock, which would create a pro-rata cash distribution to the Manager upon liquidation of Fund assets, which appears likely.

[The Form S-4 filing misrepresents] that the Manager was acting on behalf of the Fund and its Members in negotiating the terms of the [Form] S-4 filing.

[The Fund provided] inaccurate data and assumptions to the Fund's consultant for a fairness opinion regarding the valuation of the Manager's companies for acquisition, creating an inflated value for the Manager's private gain.
The structure of the [Form] S-4 filing suggests that there is a lack of good faith by the Manager in incurring [preparation] fees [for the Form S-4], as the proposals in their original form, and as revised, cannot be reasonably construed as for the exclusive benefit of the Fund and its members.

25.     The February 8, 2010 letter repeated Kurtz's threat to write to each of the Fund's 4,735 members about the alleged misrepresentations in the Form S-4 and the impropriety of the proposed Repositioning Plan.  At no time did Kurtz indicate to the Manager or counsel to the Fund that he would engage in his solicitations in accordance with the SEC's proxy rules.

26.     The Fund responded on February 11, 2010, and denied the allegations in Kurtz's February 8, 2010 correspondence.

27.     On February 16, 2010, the Manager met with Kurtz in an unsuccessful attempt to assuage his concerns.

28.     On February 23, 2010, Kurtz contacted counsel to the Fund and stated that he planned to send correspondence to Fund members "today or tomorrow" and to make arrangements to convene a meeting with Fund members as soon as possible, both with the purpose of soliciting opposition to the Conversion Transactions because he asserted that the Form S-4 contained false and misleading information.  At no time did David Kurtz indicate to the Manager or counsel to the Fund that he would engage in his solicitations in accordance with the SEC's proxy rules.

9

1    29.    On February 26, 2010, Kurtz sent a letter to all 4,735 of the Fund's

2    members urging each to vote "no" on the Conversions Transactions because, among other

3    things, he alleged that the Form S-4 contained false and misleading information.

4    30.    On March 23, 2010, the Fund's counsel sent a letter to the SEC to report the

5    February 26, 2010 solicitation as a potential violation of Section 14(a) of the 1934 Act.

6    31.    On March 24, 2010, Kurtz sent email correspondence to the Fund

7    membership stating that Kurtz intended to provide Fund members with a form of consent

8    to send to the Manager for the purpose of calling a special meeting.

9    32.    On March 25, 2010, counsel to the Fund sent a second letter to the SEC to

10   bring the March 24, 2010 solicitation to its attention as a potential violation of Section

11   14(a) of the 1934 Act.

12   33.    On April 15, 2010, Kurtz wrote a letter to the Fund's counsel and a separate

13   letter to the Manager and again advised them that he believed that information contained

14   in the Form S-4 was "inadequate and intentionally misleading" and that the Fund was

15   engaged in "an intentional endeavor to mislead the membership."

16   34.    Counsel for the Fund responded on April 30, 2010 communicating that

17   Kurtz's letters contained a variety of "erroneous factual assertions."

18   35.    The Form S-4 became effective on May 14, 2010.  The Fund now has the

19   ability to send consent solicitation/prospectus to Fund members, and as of the date of that

20   mailing has an initial 30-day window to solicit consents, which may be extended or

21   shortened, for the proposals described in the Form S-4 and amendments thereto.

## FIRST CLAIM FOR RELIEF

### (Declaratory Relief, 28 U.S.C. §§ 2201-02)

24   36.    The Fund realleges and incorporates by reference paragraphs 1 through 35.

25   37.    An actual controversy has arisen and now exists between the Fund and

26   Kurtz and the Defendant Class regarding whether the Fund included false and misleading

27   information in the Form S-4 and amendments thereto in violation of Sections 11(a) and

28   12(a)(2) of the 1933 Act, or Sections 10(b) and 14(a) of the 1934 Act and SEC Rules 10b-

10

1    5 and 14a-9 promulgated thereunder, and whether the Manager has acted consistent with

2    its fiduciary duties in advancing the Repositioning Plan.

3         38.    The Fund contends, and Kurtz and the Defendant Class deny, that:  (a) the

4    Manager did not breach its fiduciary duties in advancing the Repositioning Plan; and (b)

5    the Form S-4 does not violate Sections 11(a) and 12(a)(2) of the 1933 Act, or Sections

6    10(b) and 14(a) of the 1934 Act and SEC Rules 10b-5 and 14a-9 promulgated thereunder.

7         39.    Pursuant to 28 U.S.C. § 2201, the Fund requests a judicial declaration that it

8    did not violate the federal securities laws and that the Manager has acted consistent with

9    its fiduciary duties in advancing the Repositioning Plan.

10         40.    All prerequisites to seeking declaratory relief have been satisfied, and if not,

11    such prerequisites are futile.

12         41.    The Fund has been required to obtain the services of attorneys for the

13    prosecution of this action and for the protection of its rights.

14                                   **DEMAND FOR RELIEF**

15    WHEREFORE, the Fund respectfully requests that the Court enter judgment in

16    favor of the Fund and against Kurtz and the Defendant Class as follows:

17         1.    An Order certifying the Defendant Class;

18         2.    A judicial declaration that:

19             • the Form S-4 does not violate Sections 11(a) and 12(a)(2) of the 1933 Act,

20                or Sections 10(b) and 14(a) of the 1934 Act and SEC Rules 10b-5 and 14a-9

21                promulgated thereunder; and

22             • the Manager has acted consistent with its fiduciary duties in advancing the

23                Repositioning Plan.

24         3.    For costs and attorneys' fees incurred in the prosecution of this action, to the

25    fullest extent permitted by law.

26         4.    Such other and further relief as may be just and proper.

27

28

                                                11

DB04/803569.0119/2820132.1 PF06

1

## **DEMAND FOR JURY TRIAL**

2         The Fund demands a jury trial on all issues properly triable to a jury.

3

4   Dated:  May 17, 2010                    **STINSON MORRISON HECKER LLP**

5

6                                           By:_____
                                                     Jeffrey J. Goulder

7
                                            1850 North Central Avenue, Suite 2100
8                                           Phoenix, Arizona  85004
                                            Tel.:  (602) 279-1600
9                                           Fax:  (602) 240-6925
                                            Email:  jgoulder@stinson.com
10
                                            SETH ARONSON*
11                                          **O'MELVENY & MYERS LLP**
                                            400 South Hope Street
12                                          Los Angeles, California  90071
                                            Telephone: (213) 430-6000
13                                          Facsimile:  (213) 430-6407
                                            E-Mail:     saronson@omm.com
14
                                            ROBERTA H. VESPREMI*
15                                          2765 Sand Hill Road
                                            Menlo Park, California  94025
16                                          Telephone: (650) 473-2600
                                            Facsimile:  (650) 473-2601
17                                          E-Mail:     rvespremi@omm.com

18
                                            Attorneys for Plaintiff
19                                          IMH SECURED LOAN FUND, LLC

20                                          *_pro hac vice_ application pending

21

22

23

24

25

26

27

28

                                            12